IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KAREN PAULSEN,

                        Plaintiff,                          OPINION AND ORDER

        v.                                                  14-cv-106-wmc

BLOMMER PETERMAN, S.C., CHAZ
M. RODRIGUEZ, and DUSTIN
MCMAHON,

                        Defendants.

In this lawsuit, plaintiff Karen Paulsen alleges that defendants Blommer Peterman, S.C., and two of its attorneys Chaz M. Rodriguez and Dustin McMahon, pursued a foreclosure action against her despite being provided definitive evidence that no legal basis existed to do so.  Paulsen alleges that this conduct violated both the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 427 *et seq.*  Before the court is defendants' motion to dismiss.  (Dkt. #7.)  The court will grant that motion as to plaintiff's WCA claim because that Act expressly exempts consumer transactions over $25,000 and transactions secured by real estate mortgages.  Wis. Stat. § 421.202(6), (7).  The court will, however, deny it as to her FDCPA claim because that Act contains no such exception.

ALLEGATIONS OF FACT[1]

Plaintiff Karen Paulsen is a resident of Minnesota and a "consumer" as that term is defined by Section 803(3) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3).   Defendant Blommer Peterman, S.C. is a law firm located in Brookfield, Wisconsin and a "debt collector" as defined under 15 U.S.C. § 1692a(6). Defendant Chaz M. Rodriguez and Dustin McMahon are both attorneys employed by Blommer Peterman, and as such are each "debt collectors" under § 1692a(6) as well.

In August 2007, Paulsen and Michael Tate took out a mortgage for real property located in Polk County, Wisconsin.   Paulsen alleges that this mortgage constitutes a "debt" as defined under the FDCPA, 15 U.S.C. § 1692a(5).   On March 2, 2011, the Loan Servicer, Mortgage Electronic Registration Systems, Inc. ("MERS"), executed a "Release of Liability from the Mortgage Note," which plaintiff attaches to her complaint. (Compl., Ex. 1 (dkt. #1-1).)

While Paulsen was released from liability, the document did not release Tate. (*Id.*)   On March 11, 2011, Paulsen executed a quitclaim deed, transferring all of her interest in the property to Tate.   This deed was then recorded in the Register of Deeds for Polk County.   (Compl., Ex. 2 (dkt. #1-2).)   At some later date, the mortgage was transferred to Nationstar Mortgage, LLC.   Also at some unknown later date, Tate failed to remain current on his mortgage payments.

---

[1] The court accepts as true all well-pled factual allegations in the complaint, viewing them in the light most favorable to the non-movant.  *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)).

On June 24, 2013, the Blommer Peterman law firm sent Paulsen a letter, which erroneously identified her as a joint holder of the mortgage (along with Tate) and notified her that the mortgage had been "referred to [that firm] for foreclosure." (Compl. (dkt. #1) ¶ 22.)   On September 27, 2013, Nationstar Mortgage filed a state court foreclosure action in Polk County Circuit Court against Paulsen, Tate and their unnamed spouses.  Defendant Rodriguez was the attorney of record in the foreclosure action.

On October 18, 2013, Paulsen's step-father, Steve Sherwood, sent an email to Rodriguez asking him to remove Paulsen as a defendant based on the MERS' release and quitclaim deed, copies of which Sherwood attached to that email.   Sherwood also followed up with phone calls to confirm his request would be honored.   Eventually, someone with the Blommer Peterman law firm advised that Paulsen would not be removed as a party in the foreclosure action.  Paulsen subsequently retained an attorney to represent her in that action.   On November 4, 2013, plaintiff's attorney also sent defendants an email advising defendants that Paulsen was not a proper defendant in the foreclosure action, having been released from liability.   On or about November 5, 2013, plaintiff's counsel spoke with defendant McMahon, who confirmed that Paulsen would not be removed as a party.   Only after plaintiff's counsel was forced to file a motion to dismiss, did defendants stipulate to her removal as a party.


OPINION

Plaintiff asserts FDCPA claims for harassment or abuse pursuant to 15 U.S.C. §1692d; false or misleading representations regarding the character, amount or legal

status of the debt pursuant to §§ 1692e(1), (10); and unfair practices pursuant to § 1692f, including attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law pursuant to § 1692f(1).  Plaintiff also asserts a claim under the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 427.104(j), based on defendants' attempts to enforce a right with knowledge or reason to know that the right did not exist.  Defendants move to dismiss both claims.

## I.  WCA Claim

The Wisconsin Consumer Act expressly excludes certain transactions from its protections.  Two of those exclusions appear to apply directly to real estate mortgage debt at issue here:

> (6) Consumer credit transactions in which the amount financed exceeds $25,000, motor vehicle consumer leases in which the total lease obligation exceeds $25,000 or other consumer transactions in which the cash price exceeds $25,000.

> (7) Transactions secured by a first lien real estate mortgage or equivalent security interest.

Wis. Stat. § 421.202.  Despite its apparent application, plaintiff fails to respond to defendants' argument that the WCA does not apply to the underlying transaction at issue here, effectively acknowledging the merits of defendants' argument.  *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (holding that plaintiff's failure to present legal arguments or cite relevant authority to substantiate a claim in response to defendants' motion to dismiss resulted in a waiver of that claim).  Accordingly, the court will grant defendants' motion to dismiss plaintiff's WCA claim.

**II. FDCPA Claim**

Defendants also seek to dismiss plaintiff's FDCPA claim on the grounds that its initiation of foreclosure proceedings without a claim for deficiency falls outside the bounds of the "collection of a debt" and, therefore, outside the FDCPA's protection.  In support of this argument, defendants generally rely on the FDCPA's definition of "debt collector," which provides in relevant part that:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . **For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests**.

15 U.S.C. § 1692a(6) (emphasis added).

Defendants contend that this general definition of "debt collector" does not apply to a person attempting to enforce a security interest.  If read in isolation, defendants' position would seem silly.  Indeed, the main bolded part of the sentence actually states the opposite.  However, defendants point to 15 U.S.C. § 1692f(6) in the first clause of the bolded sentence above for support.  Because § 1692f(6) prohibits "taking or threatening to take *nonjudicial action* to effect dispossession or disablement of property if" certain conditions are met, defendants essentially argue by implication that taking or threatening to take *judicial action* for foreclosure must be permissible.

There are a number of flaws in this argument.  *First*, the specific prohibition in § 1692f(6) is simply one of eight examples of conduct that violates the general prohibition

against the "use of unfair or unconscionable means to collect or attempt to collect a debt." That one of those examples is taking or threatening foreclosure indicates this *is* among the regulated means to collect or attempt to collect a debt. While § 1692f(6)'s specific reference to "nonjudicial" foreclosure certainly raises a question as to Congress's intention with respect to judicial foreclosure actions or threats of such actions, § 1692f states at the outset that the eight examples provided are not intended to limit its general prohibition.

*Second,* the bolded portion of the above quote from 15 U.S.C. § 1692a(6) in no way limits the general definition of "debt collector." To interpret it as such, one would have to read into that bolded portion that "debt collector" includes *only* persons who use any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests *in a manner expressly prohibited by § 1692f(6).* Not only does § 1692a(6) not say that, the structure of that provision supports a reading that for the purposes of enforcing § 1692f(6), "debt collector" is expanded to reach other persons (as explained below, repossessors for example) that fall outside of the definition provided in the first sentence of that provision. Read as a whole, therefore, there is nothing about the plain language of this provision that limits the definition of "debt collector" to individuals not enforcing a security interest.

*Third,* the Seventh Circuit touched on this very issue in *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380 (7th Cir. 2010), holding that a letter threatening foreclosure, while also offering to discuss foreclosure alternatives, qualified as a communication

related to debt collection activity within the meaning of § 1692e. *Id*. at 386. Plaintiff alleges the same here. (Comp. (dkt. #1) ¶¶ 22, 39.)

In fairness, defendants are not the first to read the definition of "debt collector" to exclude foreclosure efforts. Defendants cite to district court cases finding a so-called secured interest "exclusion" under the FDCPA, which applies to mortgage foreclosure actions themselves. *See, e.g.*, *Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM)(RER), 2013 WL 5436969, *9-10 (E.D.N.Y. Sept. 27, 2013); *Rosada v. Taylor*, 324 F. Supp. 2d 917, 925-26 (N.D. Ind. 2004). While the Seventh Circuit has not considered this exact issue, however, so far *all* courts of appeals have held that "mortgage foreclosure is debt collection under the Act. Lawyers who meet the general definition of a 'debt collector' must comply with the FDCPA when engaged in mortgage foreclosure. And a lawyer can satisfy that definition if his principal business purpose is mortgage foreclosure or if he 'regularly' performs this function." *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 464 (6th Cir. 2013); *see also Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (rejecting argument that a debt ceased to be a debt under the FDCPA once foreclosure proceedings were commenced and holding that defendant attorney's "actions surrounding the foreclosure proceeding were attempts to collect that debt"); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) (subjecting attorney defendant to general requirements of FDCPA in action involving foreclosure, explaining that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests"); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (holding that

non-judicial foreclosure actions fell within the general definition of debt collection under the FDCPA; "The fact that the letter and documents relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt within the meaning of § 1692e."); *cf. Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) (finding attorney defendants' actions of filing suit to enforce a lien on plaintiff's property fell within the general definition of debt collection).[2]

While the court has considered the contrary textual argument advanced by district courts in the cases cited by defendants, the reasoning in the court of appeals' cases cited above are more persuasive for at least two reasons. *First*, in interpreting a provision of the FDCPA (as is true for all statutes), the court must consider the Act as a whole. *See Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 601 (7th Cir. 2012) (*en banc*) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute.") (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)). Other provisions of the FDCPA support reading efforts to execute on secured interests as part of the general definition of debt collection. For example, the FDCPA defines "debt" very broadly too include "any obligation or alleged obligation of a

---

[2] The Federal Trade Commission has similarly suggested in commentary that the entire FDCPA applies to parties enforcing security interests as long as they also meet the general definition of a "debt collector" under § 1692a(6). *See* Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (1988) (December 13, 1988) ("Because the FDCPA's definition of "debt collection" includes parties whose principal business is enforcing security interests only for section 808(6) [§ 1692f(6)] purposes, such parties (*if they do not otherwise fall within the definition*) are subject only to this provision and not to the rest of the FDCPA." (emphasis added)); *see also Kaltenbach*, 464 F.3d at 528 (deferring to the FTC's interpretation).

consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Glazer*, 704 F.3d at 460-61 (quoting 15 U.S.C. § 1692a(5)). Importantly, the definition does not turn on "whether the obligation is secured, but rather upon the purpose for which it was incurred." *Id.* at 461; *Reese*, 678 F.3d 1211 ("A debt is still a 'debt' even if it secured."). Moreover, debt collection encompasses a broad array of activities, with no indication that the activities do not include collection efforts that are legal in nature. *Id.* (citing *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (holding that "a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts" is a "debt collector" under the FDCPA (emphasis added)).

*Second*, contrary to defendants' argument, the fact that a mortgage foreclosure proceeding involves execution on property does not alter the fact that its essential purpose is to obtain payment on an underlying debt. "[E]*very* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt." *Glazer*, 704 F.3d at 461. Indeed, certain provisions of the FDCPA are directed at foreclosure or enforcement of security interest. *See* 15 U.S.C. §1692i (requiring a debt collector seeking to enforce an interest in real property to file in the judicial district where the property is located); *see also Kaltenbach*, 464 F.3d at 528 (rejecting district courts' opinions holding that § 1692f(6) is the only section that regulates the enforcement of security interests in part because of those courts' failure to "reconcile the fact that § 1692i(a)(1) is directed at persons enforcing security interest").

In their reply brief, defendants primarily focus on the fact that at least some of the cases supporting plaintiff's reading of the FDCPA involve actions preceding foreclosure, and therefore are distinguishable from a "pure" mortgage foreclosure. (Defs.' Reply (dkt. #12) 4.) In support, defendants primarily rely on a Second Circuit case in which the court held that the FDCPA does not cover inflated proof of claims in the bankruptcy context, reasoning that the "claims process is highly regulated and court controlled," and provides "remedies for wrongfully filed proofs of claims," which need not be supplemented by the FDCPA. *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010). Importantly, the *Simmons* court was not presented with the issue here -- whether a foreclosure proceeding falls outside the protections of the FDCPA. As detailed in its decision, the focal point for the Second Circuit was the application of the federal Bankruptcy Code, which protects the *debtors* from fraudulent and otherwise defective proofs of claim. *Id.* In any event, as previously noted in this opinion and ignored in defendants' briefing, Paulsen's complaint does *not* just seek relief from defendants' act of filing a state foreclosure action without a factual basis for doing so, but for repeatedly refusing to withdraw its claim against Paulsen even after being provided with definitive proof that no factual or legal basis existed to do so.

Ultimately, defendants have failed to demonstrate that the same protections available to debtors in bankruptcy exist for a debtor in a judicial foreclosure initiated by a creditor. Indeed, this case is arguably an example to the contrary, since Paulsen was seeking to *avoid* a lawsuit (rather than proceeding with one, as in bankruptcy) and was forced to bring a motion to dismiss before convincing defendants to do the right thing.

Even if the bankruptcy context proved a fair analogy to a judicial foreclosure process, the Seventh Circuit has essentially rejected the holding in *Simmons*, finding instead that (1) there is no "irreconcilable conflict" between the bankruptcy code and the FDCPA, and (2) "[i]t is easy to enforce both statutes, and any debt collector can comply with both simultaneously." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).  Of course, as noted already, plaintiff's allegations here extend beyond the foreclosure action, to communications sent before the commencement of that action (Compl. (dkt. #1) ¶ 22), rendering flawed defendants' attempts to characterize plaintiff's challenge to a "pure" mortgage foreclosure.

Consistent with that of the Courts of Appeals cases cited above, this court finds the only limit in § 1692a(6) is to "people who engage in the business of repossessing property, whose business does *not* primarily involve communicating with debtors in an effort to secure payment of debts," for example repossession agencies and their agents. *Glazer*, 704 F.3d at 464; *see also Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (noting that "repossessors" must comply with § 1692f(6)).  To hold otherwise, "would create a loophole in the FDCPA.  A big one." *Reese*, 678 F.3d at 1217-18; *Glazer*, 704 F.3d at 462 ("[I]f a collector were able to avoid liability under the FDCPA simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purposes of the FDCPA." (quoting *Piper*, 396 F.3d at 234)).

11

ORDER

IT IS ORDERED that defendants Blommer Peterman, S.C., Dustin McMahon, and Chaz M. Rodriguez's motion to dismiss (dkt. #7) is GRANTED as to plaintiff's Wisconsin Consumer Act claim and DENIED in all other respects.

Entered this 31st day of March, 2015.

BY THE COURT:


/s/

_____
WILLIAM M. CONLEY
District Judge